LYMAN A. SPALDING, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, EX REL. FREDERIC F. BACKUS, DEFENDANTS.

THIS case was brought up from the Supreme Court for the Trial of Impeachments and the Correction of Errors of the State of New York, by a writ of error issued under the 25th section of the Judiciary Act.

The facts were these.

The relator, Frederick F. Backus, previous to the 20th day of July, 1840, had obtained a judgment in the Supreme Court of the State of New York against Lyman A. Spalding, the plaintiff in error, for the nonperformance of promises, and on the said last mentioned day the relator, as complainant, filed a creditor's bill against the said Spalding, in the Court of Chancery of said State, before the Vice-Chancellor of the Eighth Circuit, on which an injunction was issued and served on said Spalding, to restrain him, among other things, from collecting, receiving, transferring, selling, assigning, delivering, or in any way or manner using, controlling, interfering or meddling with, or disposing of, any property, money, or things in action belonging to him.

On the 13th day of December, 1841, an order was made by said court to attach said Spalding for a violation of said injunction, and such proceedings were had in said court, that on the 21st day of March, 1842, the said court declared and adjudged that the said Lyman A. Spalding had been and was guilty of a contempt of court in wilfully violating said injunction, by disposing of property and paying out money contrary to the terms of said injunction; and that such misconduct of the said Lyman A. Spalding was calculated to

and did impair, impede, and prejudice the rights and remedies of
the complainant in the said cause, and it was ordered that he pay a
fine for said contempt to the amount of $3,000, and the costs and
expenses in relation to said contempt of $196·51; and that he be
committed to the common jail of the county of Niagara, until the
fine, costs, and expenses are paid, and that a mittimus issue ac-
cordingly to the sheriff. And it was also ordered, that the costs
and expenses be paid to the solicitor of the relator, and the $3,000
be paid to the clerk of said court, subject to the further order of
the court.

On the 6th day of May, 1842, an *alias* mittimus was issued ; on
the 7th day of May, the said Spalding was arrested, and continued
under said arrest until the 29th day of September, 1842.

On the 11th day of April, 1842, the said Lyman A. Spalding
presented his petition to be declared a bankrupt, pursuant to the
act of Congress entitled " An Act to establish a uniform System of
Bankruptcy throughout the United States," passed August 19th,
1841, ch. 9, and on the 17th day of September, 1842, was duly
and fully discharged, under said act, from all the debts owing by
him at the time of presentation of his said petition to be declared
a bankrupt, and received his certificate thereof, pursuant to said
act.

Afterwards, on his application, he was brought before a Su-
preme Court commissioner of said State, on habeas corpus, and
claimed to be discharged from the mittimus, on the ground of being
discharged by his certificate from the fine, costs, and expenses.
The relator, having been duly notified, appeared by counsel and
opposed said discharge, but the commissioner, on the presentation
of the said certificate, discharged said Spalding from the mittimus
on the 29th day of September aforesaid.

On the 18th day of November after, the relator made application
to the said Vice-Chancellor for another mittimus to enforce the
collection of said fine, costs, and expenses, and an order was en-
tered that the said Spalding show cause before the Vice-Chancel-
lor why the same should not issue.

On the 28th of said month, the relator and Spalding appeared
before said Vice-Chancellor ; and the said Lyman A. Spalding
presented his certificate in bankruptcy aforesaid, and claimed that
by the said bankrupt act he was by said certificate discharged from
all his debts, and from the said fine, costs, and expenses.

On the 18th day of January, 1843, the said Vice-Chancel-
lor ordered, adjudged, and decreed that a new mittimus issue, to
commit the said Spalding to the common jail of the county of
Niagara, until he pay the said fine, costs, and expenses, $196·51,
to be paid to the solicitor of the relator, and the $3,000 be paid to
the clerk of the court, subject to the further order of the court,
and declared and decided that the discharge of the said Lyman A.

Spalding, under the bankrupt law, did not entitle him to be released from the payment of the said fine, costs, and expenses, nor from imprisonment for its collection.

From which decision and decree the said Spalding appealed to the Chancellor of the said State, and the said Chancellor, on the 2d day of June, 1843, affirmed the decision and order or decree appealed from, and decided that the said defendant, Lyman A. Spalding, was not and could not be discharged from the said fine, costs, and expenses under the bankrupt act. 10 Paige, 284.

And on appeal by the said Lyman A. Spalding to the Court for the Correction of Errors of the State of New York, the said court affirmed the said order or decree of the said Chancellor, with costs and interest on the amount decreed to be paid, and decreed that the said Spalding was not by the bankrupt act discharged from the payment of the said fine, costs, and expenses.

The following is the opinion of the Court for the Correction of Errors, as pronounced by Chief-Justice Nelson.

The appellant was adjudged guilty of a contempt of court for a wilful violation of an injunction by the Vice-Chancellor of the Eighth Circuit, on the 21st of March, 1842, and amerced, in the sum of $3,000, and costs and expenses of the proceeding, which were taxed at $196·51, with directions that he be committed to the jail of Niagara county until the same were paid.

On or about the 7th of May, he was arrested for nonpayment of said fine; but succeeded in preventing an actual commitment into the custody of the jailer, by the use of the writ of habeas corpus, until he obtained his discharge under the bankrupt law, 17th September following, when he was soon after set at liberty on the production of said discharge, by Joseph Center, a commissioner to do the duties of a judge of the Supreme Court at chambers.

On the 18th of November, the relator, upon full statement of the foregoing facts, applied to the Vice-Chancellor for a recommitment, on the ground that the discharge of the commissioner was without authority, and void; which, after hearing counter affidavits, and counsel for both parties, he adjudged accordingly, and entered an order for said recommitment to close custody till the fine was paid.

On appeal to the Chancellor, this order was affirmed, and the question is now here on appeal to this court.

Chief-Justice NELSON. Upon the view I have taken of the case, the only question at all material to examine is, whether the fine inflicted upon the appellant for a wilful violation of the injunction is a debt within the meaning of the bankrupt law, so that his discharge, granted under it, will operate to exonerate him from imprisonment. If not, then, beyond all question, the act of the commissioner in discharging the appellant from the mittimus was

without authority, and the order of the Vice-Chancellor directing a recommitment proper.

By the 4th section of the bankrupt law (Laws Cong. 1841, p. 11), the certificate shall "be deemed a full and complete discharge of *all debts, contracts, and other engagements of such bankrupt which are provable under this act,*" &c.

The adjudication upon which the fine was imposed, is as follows:—"The said Lyman A. Spalding has been and is guilty of a contempt of this court in wilfully violating the said injunction, and by disposing of property and receiving and paying out money contrary to the terms of the said injunction; and that said misconduct of the said Lyman A. Spalding was calculated to, and actually did, impede and prejudice the rights and remedies of the complainant in the said cause."

This act, for which the appellant has thus been adjudged guilty, is a criminal offence under the Revised Statutes (vol. 2, p. 577, § 14), and was before, at common law (4 Bl. Com. 129), for which he was liable to an indictment, and, on conviction, to fine and imprisonment.

He might have been punished in this way, and subjected to a fine not exceeding $250, and imprisonment for one year. (2 Rev. Stat. 582, § 46, and p. 577, § 14.)

But this remedy by indictment for suppressing the mischief is oftentimes found too tardy for the exigency of the case; and hence the law has also authorized the more summary proceeding by attachment, as for a criminal contempt, whereby the offender is arraigned at once upon the charges, and the course of justice more promptly vindicated and sustained. As has been well remarked in reference to this subject, laws, without a competent authority to secure their administration from disobedience and contempt, would be vain and nugatory. A power, therefore, in the courts of justice to suppress such contempts by an immediate attachment of the offender results from the first principles of judicial establishments, and must be an inseparable attendant upon every superior tribunal.

This summary mode of punishment is the one that has been resorted to in the instance before us; and upon a conviction, the propriety and justice of which is not in question, a fine of $3,000 and costs of proceedings has been imposed; a penalty, as we have seen, for a strictly criminal offence, and inflicted under a strictly criminal proceeding.

It appears to me, therefore, the very statement of the case is enough to show, that there is no color for the ground taken, that the fine is a debt within the bankrupt law, any more than would exist in the case if it had been imposed after conviction, on an indictment for any other of the numerous minor offences within the calendar of crimes.

It is contended, however, that these proceedings, being under the

Spalding v. State of New York.

provisions in the Revised Statutes (vol. 2, p. 440, tit. 13) designed for the purpose of enforcing civil remedies, should, though in form criminal, be regarded simply as another remedy for collecting the debt claimed in the suit in the Court of Chancery, and upon which they have been founded ; that the fine is, in point of fact, imposed for the purpose of being applied to the extinguishment of that debt, whenever, in the progress of the suit, it shall have been established ; that it is but incidental to the debt, and dependent upon it, and a discharge of the one must necessarily discharge the other.

The answer to all this is, that several cases of strictly criminal contempts have been incorporated into the provisions, of the statute under this head, " Of proceedings as for contempts, to enforce civil remedies," &c., of which the case before us is one, for the purpose of authorizing the court to impose the fine, with a view to the actual loss or injury sustained by the party aggrieved, in consequence of the criminal act, and of applying the money in satisfaction of the same, instead of imposing it for the benefit of the people.

This is most manifest from a perusal of the several provisions. We find there the case of persons assuming to be officers, attorneys, solicitors, and counsellors of the court, and acting as such without authority. Also for rescuing property from seizure, and persons from arrest; for unlawfully detaining a witness or party from court; and for any other unlawful interference with the process or proceedings in the action; the refusal of a witness to attend or to be sworn; the improper conduct of jurors, in conversing with a party to the suit, receiving communications from him, or from any other person, in relation to the merits; for disobedience to any lawful order, decree, or process of the court, &c. (2 Rev. Stat. 441, § 1, Sub. 3, 4, 5, 6.)

All these are, strictly, cases of criminal contempts, which have nothing to do with the collection of debts, or enforcement of civil remedies beyond the support and vindication of the general administration of the laws ; and the following provisions of the statute, regulating the punishment, to be inflicted, shows the reasons for bringing them under this head. (§ 20, p. 443.) If the court shall adjudge the defendant to have been guilty of the misconduct charged, and that such misconduct was calculated to, or actually did, defeat, impair, impede, or prejudice the rights or remedies of the party, it shall proceed to impose a fine, or to imprison, or both, as the nature of the case shall require. (§ 21.) If an actual loss or injury shall have been produced by the misconduct alleged, a fine shall be imposed sufficient to indemnify the party, and to satisfy his costs and expenses, which shall be paid over on the order of the court ; and the payment and acceptance of such fine shall be a bar to any action by the aggrieved party to recover damages for said injury. (§ 23.) When such misconduct consists in the omission to perform some act or duty yet in the power

of the defendant to perform, he shall be imprisoned only until he shall have performed such act or duty, &c.

Here, in cases confessedly criminal and indictable, and the penalties for which, ordinarily, would go for the benefit of the people, the courts are authorized to impose them, with a view to the indemnity of the party aggrieved, making, at the same time, his acceptance of the fine a bar to any private action for the injury.

But the fine imposed is no less a penalty for a criminal act, and intended as a punishment for the same, than if inflicted for the benefit of the people. The imposition, in the way prescribed by the statute, accomplishes the double purpose of punishment for the misconduct, on the one hand, and indemnity to the aggrieved party, on the other.

I am satisfied, therefore, that the discharge under the bankrupt law has no sort of application to the case, and that the order for the recommitment by the Vice-Chancellor was proper and legal.

It has been urged, that, whether the commissioner erred, or not, in discharging the appellant from the mittimus, under the writ of habeas corpus, the Vice-Chancellor had no authority to recommit; that the order discharging him should have been first reversed by certiorari before the second commitment. (§ 61, p. 473.)

This would be true, if the commissioner had had jurisdiction over the subject matter, and had rendered only an erroneous judgment in the premises; but has no application where his proceeding is wholly without authority, and void, as in this case. (2 Rev. Stat. 470, § 42, Sub. 3, § 44. Cable v. Cooper, 15 Johns. R. 152.) (A Copy.)

N. HILL, Jr., *Reporter.*

To review this judgment of the Court of Errors, the present writ of error was brought.

The case was argued by *Mr. Curtenius,* for the plaintiff in error, and *Mr. Delano,* for the defendant in error.

*Mr. Curtenius,* for the plaintiff in error.

By the affirmation of the said order or decree, it is decided, *that the said fine, costs, and expenses* is not a *debt,* within the late bankrupt law of the United States. And that the certificate of the plaintiff in error under the said *law did not discharge* him from the *payment* of the said *fine, costs, and expenses.*

We insist on the contrary, and shall seek to maintain, that the said *fine, costs, and expenses* imposed on the said plaintiff in error *is a debt.* And that his *certificate of discharge* under the said bankrupt law *did* and *does discharge* him from the *payment thereof.*

On the decision of these points rests the whole of this cause. We make, therefore, as our

First Point, That the *fine, costs, and expenses* imposed on the plaintiff in error, previous to his petition in bankruptcy, was *a debt*, from which he was duly *discharged* by his certificate under the bankrupt law of the United States.

By the late bankrupt law (Laws of Congress, 1841, chap. 9), " any person whatsoever residing in any State or Territory of the United States *owing debts*,' may petition' except where the debts were created by defalcation, as," &c., " or while acting in any fiduciary capacity, and on compliance with the act " shall be entitled to a full *discharge from all his debts.*" And that said discharge and certificate, when duly granted, shall in all courts of justice be deemed a *full and complete discharge of all debts*, contracts, and engagements of such bankrupt, which are provable under this act."

In our case, there is no pretence that the plaintiff in error or his debts come under any of the exceptions in the first section; or that there is *any exception* in the law which excludes *him* or *it*. But the decision is against us on the ground that the *law itself* was not intended to apply to a *case like ours*. What, then, is our case ?

In answer, it becomes necessary to inquire by what power, under what statute, and for what purpose, the imposition of this fine, costs, and expenses was made, and the plaintiff in error placed beyond the reach of relief from the bankrupt law, and subjected to perpetual imprisonment.

The power is claimed to be exercised by virtue of the revised statutes of the State of New York, " as *for a contempt.*"

There are two statutes, under the one or the other of which the fine, costs, and expenses were imposed. The one (2 Rev. Stat., 2d ed., 207) is entitled, " Provisions concerning courts of record, their process and proceedings," by which power is given to punish as criminal contempts wilful disobedience of any process or order lawfully issued or made by a court of record. The punishment *to* be by *fine or imprisonment*, or both, but the *fine* is limited to $ 250, and the imprisonment to thirty days. And section 14 expressly states, that these sections shall not extend to any proceeding against parties or officers, as for a contempt, for the purpose of enforcing any *civil right or remedy.* Under this statute, the *fine,* &c., could not have been imposed.

The other statute (2 Rev. Stat., 2d ed., 410) is entitled, " *Of proceedings, as for contempts, to enforce civil remedies, and to protect the rights of parties in civil actions,*" which provides, that,

§ 1. Every court of record shall have power to punish, by fine and imprisonment, or either, any neglect or violation of duty, or any misconduct, by which the rights or remedies of a party in a cause or matter depending in such court, may be defeated, impaired, impeded, or prejudiced, in the following cases.

§ 20.   If the court shall adjudge the defendant to have been guilty of the misconduct alleged, and that such misconduct was calculated to, or actually did, defeat, impair, impede, or prejudice the rights or remedies of any party, in a cause or matter depending in such court, it shall proceed to impose a fine, or to imprison him, or both, as the nature of the case shall require.

§ 21.   If any actual loss or injury shall have been produced to any party by the misconduct alleged, a fine shall be imposed sufficient to indemnify such party, and to satisfy his costs and expenses, which shall be paid over to him on the order of the court. And in such case the payment and acceptance of such fine shall be an absolute bar to any action by such aggrieved party to recover damages for such injury or loss.

§ 22.   In all other cases, the fine shall not exceed two hundred and fifty dollars, over and above the costs and expenses of the proceedings.

§ 26.   Persons proceeded against according to the provisions of this title shall notwithstanding be liable to indictment for the same misconduct, if it be an indictable offence; but the court before which a conviction shall be had on such indictment shall take into consideration the punishment before inflicted, in forming its sentence.

The adjudication was under section 20, as the mittimus is in the words of this section.  And the fine, &c., is under section 21, for the purpose of indemnifying the relator for the removal of so much of the property, or money, on which he had a lien by his injunction.

That is, it belongs to the party, on his establishing his right to it by obtaining a decree of the court on his bill of complaint.  The *damage* was the money, or value of the property, on which the relator had his lien by his bill and injunction; the *offence*, the disposing of that amount by the plaintiff in error; the *fine* is the amount of that damage, termed by the statute a *fine*.  It is a certain, fixed, and definite amount; *a debt*, and belongs to the relator if he obtains a decree on his bill; if *not*, it then belongs to the plaintiff in error.

Here, then, we have the power, the statute, and the purpose under and for which the fine, costs, and expenses were imposed.

But it is urged against us that this is a *fine for a contempt*, an alleged wilful contempt; as though that implied a criminality which placed the unfortunate party adjudged guilty beyond relief, and interposed an insurmountable barrier between him and the benefit of the bankrupt law.

(*Mr. Curtenius* then proceeded to argue that the object of this statute was only to enforce civil remedies; by the people's interposing between party and party, and permitting a party to use the same process which the people do in their cases of contempt; that

the money was payable to one party to indemnify him for the loss which he had sustained by the act of the other party; that the offending party might still be indicted for the same offence, which could not be the case if both were offences against the public; that in case the claimant failed afterwards to establish his right to the money, it would be paid to the defendant, but never to the people; that even if it was a debt due to the people, it would be discharged by bankruptcy, inasmuch as they had chosen to produce the relation of debtor and creditor between themselves and the offending party.)

It is then a debt. 2 Jacob's Law Dictionary, 200; Ex parte Smith, 5 Cowen, 277; Wallsworth *v.* Mead, 9 Johns. Rep. 367; McDougall *v.* Richardson, 3 Hill's Rep. 558; Case of James Baker, 2 Strange, 1152. It is not only a debt, but a debt discharged by the bankrupt law. 2 Molloy, 442; Ex parte Parker, 3 Vesey, 554; 1 Deacon, 235; Hopcroft *v.* Farmer, 8 Moore, 424; Lewis *v.* Morland, 2 Barn. & Ald. 56; 1 Sch. & Lef. 169. These cases establish that the form of the process is not to be considered, but the cause of its issuing ; that if the ground of the proceeding be a debt, it is a process of debt ; and that if the process is to compel payment of a sum of money, it is a debt. The same views are sustained by the following authorities:—2 Rose's Cases in Bankruptcy, 196; Cooper's Cases in Chancery, 198; The King *v.* Edwards, 9 Barn. & Cres. 652; 1 Bos. & Pul. 336; 1 Cowp. 136.

Second Point. That there is error in the affirming the decree of the $196·51 of costs to be paid to the solicitor of the relator, and that the decree in this case, being void in part, is void in whole, and must be reversed. 1 Moore's Rep. 494; 4 Bl. Com. 285; 13 East, 190.

Third Point. That if the *fine* was imposed for a *criminal offence,* the *statute* under which the same was imposed is repugnant to a law of Congress, and the Constitution of the United States, and is therefore illegal and void.

*It is repugnant to the bankrupt law.*

1st. Because it operates as a fraud on the act, by securing a preference of one creditor over the general creditors.

2d. It seeks to compel the bankrupt to violate the act by paying one creditor before, and at the expense of, the others.

3d. It seeks to compel a violation of the act, and debars the bankrupt of its benefits.

The act declares all payments, &c., in contemplation of bankruptcy, and all preferences, void, and a fraud on the act, and that the person making such unlawful payments and preferences shall receive no discharge.

In our case, after the filing of his petition, the plaintiff in error was divested of all his property. He could not pay, for he had nothing. He could not pay the property in his schedules, be-

cause it did not belong to him.    And neither the relator nor the court could receive, and if received, the assignee might have recovered it again.

The order and the mittimus, then, sought to enforce an illegal act, a fraud on the creditors of the bankrupt, and a violation of the principle of equality among the creditors .

*It is repugnant to the Constitution.*

1st. If a criminal offence, it imposes, under the circumstances, an excessive fine, and a consequent cruel and unusual punishment.

We have seen, that, on filing his petition in bankruptcy, the plaintiff in error was by the act divested of all his property. If he swore to the truth, his schedules contained it all.    If he did not, it still would belong to the assignee.    His decree in bankruptcy was evidence that he had sworn to the truth, and the imposition of this fine, if criminal and going to the people, was excessive, and was a cruel punishment for the offence, for it imposed an impossibility.    The law never imposes a fine, where it presumes the party can have nothing to pay.    Here was no presumption, but actual legal evidence, that there was nothing.    If it be said that the order was made before his petition, and without knowledge of it, we answer, with full knowledge of all these facts it is sustained, and sought to be enforced.

2d. It doomed him in fact, by the order of a single judge, to perpetual imprisonment.

This follows of course; — divested of every thing, — deprived of liberty, — the narrow bounds of a prison cell the field of his enterprise, — and hours of solitude, without means for the exercise of his industry, could never enable him to pay this heavy fine, costs, and expenses.

3d. It subjects him to punishment twice for the same offence.

We have insisted, that, if the fine was imposed for a criminal contempt, *it is still a debt.*    And that if the offence is criminal, the statute is illegal and void; and that the only way in which the statute can or ought to be sustained is on the ground that it is civil, and that the fact that the fine under it belongs to the party is proof that it is so.

But it is objected, that the contempt is criminal, because, both at common law and by the statute, it is indictable ; we say it is also civil.    If indicted, the fine is limited to $250.    If civil, to the damages of the party.    In our case, the contempt is civil, and the fine the damages ; and the plaintiff in error is still subject to indictment, and fine of $250.    From which does he ask to be discharged ?    Certainly not from the fine on the indictment.    Although from that, we insist, as before, that he would be discharged. We make as our

Fourth Point.    The judgment of the relator against the plaintiff in error, at the time of the filing of his petition under the bank-

rupt act, was a *debt*, and the ground on which the proceedings in chancery were had. The decree or order imposing the fine, costs, and expenses, therefore, is either a *new* or *additional debt*, founded and resting on the original; or, it is the remedy given by statute, to enforce, as for contempt, the payment of so much of the old debt.

If the fine creates a *new* or *additional* obligation on the part of the plaintiff in error to pay, it is a *debt*, — a debt of no higher nature or greater importance than a judgment for a tort, as a trespass on the person or the property of the relator, from which under the bankrupt law he would be discharged. (Cooke, B. R. 2, 5, 574.)

As a new or additional debt, it was certain, fixed, and definite, previous to the filing of his petition, and provable under the Act, —provable by the *relator*, being *his* ascertained damages, imposed for *his* benefit, and *payable* to *him*, by the statute ascertaining and fixing it. By his certificate, therefore, he is discharged from it. 2 Rose, 196; Cooper, 198; 9 Barn. & Cres. 652; 1 Bos. & Pul. 336.

Or, if so much of the old debt, and the order, decree, and mittimus the remedy under the statute for its enforcement, then the plaintiff in error, being discharged from the debt itself, must be from the remedy for its enforcement.

Here, then, the plaintiff in error was ordered and decreed to pay the relator $ 3,000 and the expenses; which $ 3,000 would and must, if received by the relator, reduce so much of his judgment; what act or event would discharge the plaintiff in error from this order? Would the receipt of the relator? Certainly. Would a satisfaction of that judgment under the hand of the relator? Undoubtedly. Why? Because it would be a legal discharge.

Then why not, by the law of the land, as fully and clearly discharged from that judgment by his certificate discharging him from all his debts, as though he had produced the satisfaction piece of the relator? The one, the legal discharge of the relator; the other, equally so of the bankrupt law.

When discharged from the judgment, he is discharged from the execution, or process to enforce its collection, or any part of it, the same as if imprisoned on a *capias ad satisfaciendum*; the debt being discharged, the remedy passes with it, for there is nothing left to operate upon. For, if the money had been paid into court, it never could have become the relator's without proof of the existence of the judgment as alleged in his bill. If that judgment is satisfied at any time before the money paid over by court to the relator, the money would revert to the plaintiff in error, or, in this case, to the assignee in bankruptcy.

As a *new debt* or obligation, or as a remedy for the collection

of so much of the old debt or judgment, therefore, the plaintiff in error is equally discharged by his certificate.

Again, this is manifest. The relator sought by his bill to collect this debt, say $ 5,000 ; he obtains a *lien* on $ 3,000, which is removed by the plaintiff in error ; and he is ordered to replace it by paying that amount into court. If done, the relator suffers *no injury.* The relator sustains his bill by proving his judgment or debt of $ 5,000, and obtains an order that the $ 3,000 in court be paid over to him. Can it be supposed for a moment, that he is still entitled to a decree for the *full* amount of his judgment of $ 5,000 in addition ?

And yet this is the certain result of the decision of the Court of Errors. For if the $ 3,000 is paid to the relator, it cannot be applied to the payment of so much of the payment, because the whole of that is discharged by the certificate in bankruptcy. And because, under the present decision, the fine is no part of it.

The relator, however, must prosecute his bill of complaint to a decree, before he can obtain an order for the payment of the $ 3,000 to him. And that decree must be for the whole amount of his judgment of $ 5,000, because, under the said decree, the $ 3,000 is no part ; — thus receiving the $ 3,000, and a decree for $ 5,000 in addition. Presenting the extraordinary fact, — a fact, too, without precedent in the courts of law or equity of this or any other country (but in direct violation of the common principles of both), — that a party, seeking to collect a civil demand of $ 5,000, may, by the act of the defendant, occasioning no injury whatever to him, be entitled to recover of that defendant $ 8,000. A decision producing such a result is erroneous, and must be reversed.

We have not urged in this court the point made by us in the courts below, in relation to the power of the Supreme Court commissioner to discharge the plaintiff in error on his certificate, because it does not involve the all-important questions on which this case depends, and if the certificate entitles him to a discharge, it ceases to be a point of importance.

The point, that the voluntary part of the bankrupt law is unconstitutional, although on the printed points of the defendants in error in the court below, was not passed upon, raised, presented, or alluded to in the Court of Errors, and cannot therefore be raised here.

*Mr. Delano,* for defendants.

The points now made are the same, on the part of the defendants, as those insisted upon before the Court of Errors.

*First.* The Supreme Court commissioner, Center, had no authority to discharge the plaintiff in error. All the proceedings before him were without jurisdiction, and void.

1. Because the plaintiff in error was convicted and punished by the Court of Chancery, as for a criminal contempt, the cause of his imprisonment being plainly and specially stated in the mittimus.

A contempt, in its legal acceptation, means the treating of a court of justice, or person invested with judicial authority, in a contumelious or disrespectful manner, or in violating rules or orders made by competent tribunals. 6 Petersdorff Abr. 106, 157.

The contempt, of which the plaintiff in error was convicted, was a criminal contempt. This is defined, in the Revised Statutes of New York, to be the wilful disobedience of any process or order lawfully issued or made by any court of record. 2 Rev. Stat. 278 ; 2d ed. 207, § 10.

This species of contempt is also punishable, by indictment, by the laws of New York. Rev. Stat. 692, § 14 ; 2d ed. 577.

These enactments are merely declaratory of the common law, as it existed previous to the Revised Statutes ; and the object of them is to define and limit the nature of the offence and the powers of the courts.

Blackstone enumerates, among the crimes for which punishment might be judicially inflicted, a contempt of the process of any of the superior courts of the king.

" A solid and obvious distinction exists between contempts, strictly such, and those offences which go by that name, but which are punished as contempts only, for the purpose of enforcing some civil remedy." This distinction is clearly marked in the Revised Statutes of New York, and the note of the revisers shows such was their intention. The contempt, of which the plaintiff in error was found guilty, was the wilful disobedience of the process of injunction. He did not refrain from doing what he was enjoined not to do. The power to punish for a wilful disobedience of process of this kind is essential to the administration of justice ; without it, the writ of injunction in many cases would be entirely nugatory. When the process, which goes by the name of contempt, is merely to collect money which the party may not be able to pay, it is then properly deemed a mere civil remedy. 4 Black. Com. by Chitty, 122 ; 1 Hawkins's Pleas of the Crown, 149, 150 ; 1 Kent's Com. 300, note (b), 3d ed. ; 3 Rev. Stat. 695, original note to §§ 10 – 15.

If the contempt was a criminal contempt, it being clearly set out in the mittimus, the commissioner, Joseph Center, had no authority to discharge the plaintiff in error, nor had he any jurisdiction over the matter. But it was the duty of the commissioner to remand the party to the custody of the officer, if any contempt was plainly and specially charged in the commitment. The discharge of the commissioner could not, therefore, be any valid ob-

jection to the issue of the second *alias* mittimus. It was not a subject over which the commissioner had jurisdiction.

2. Because the commissioner, not being a court of justice, as required by the bankrupt act, had no authority to try the fact, whether the discharge was duly granted, or not.

The commissioner has merely the power of a judge of the Supreme Court at chambers. No issue could be made up or tried. The discharge might be impeached for fraud, &c., and no court can give effect to the discharge, which has not power to inquire into its validity. An issue was claimed, and the relator required an opportunity to try the question.

The act of Congress neither expressly, nor by implication, vests any such authority in a commissioner, and he is expressly prohibited from its exercise by the forty-second section of the habeas corpus act.

3. No discharge could be granted if the bankrupt act released the plaintiff in error, except by application to the Court of Chancery.

A contrary course would lead to a conflict of jurisdiction between the several courts. The uniform practice in England and in this country is believed to have been to apply to the court where the judgment or decree is, or from which the process issued. (Act to amend the Law relating to Bankrupts, 6 Geo. IV., ch. 16, § 126.)

*Second.* The discharge under the act to establish a uniform system of bankruptcy did not release the plaintiff in error, although the Supreme Court commissioner had no jurisdiction; yet as the order appealed from was an application for a second *alias* mittimus, and the court held the discharge did not apply to the case, and was no answer to the application, the question in relation to the effect of the discharge in bankruptcy is presented by the case. The jurisdiction of the commissioner is not important, except as an answer to the point which may be made by the plaintiff in error, that there was a decision by a competent tribunal, not vacated or reversed, and that such decision could not be inquired into on the application to the Court of Chancery. The principal question remains, namely, the effect of the discharge of the plaintiff in error under the bankrupt act.

If this contempt was criminal, the power of Congress to grant a dispensation for crimes might well be questioned. It is not necessary to repeat what has been said under our first point. The act of Congress, commonly called the bankrupt act, does not embrace this case. The fourth section of the act declares the effect of the discharge in these words : — " And such discharge and certificate, when duly granted, shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts, and other engagements of such bankrupt *which are provable under*

*this act*, and shall and may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever." The only debts discharged are those provable under the act. If the fine imposed upon the plaintiff in error was not a debt provable under the act, the discharge does not present a bar. The fine imposed was not a debt, contract, or engagement. The course of practice in such cases is, as was done in this case, to order the money paid into court to abide the final result of the cause. A creditor's bill had been filed, and an injunction obtained; and for the wilful and voluntary breach of this injunction, the fine was imposed. Although the fine was imposed, in part, to indemnify the party, yet he had no claim to it until the result of the litigation should give it to him. It was to be paid into court, and there remain, to abide the final order of the court. It was not a debt provable under the act, for there was no one to prove it. In no way could it be proved as a debt. It was no more a debt than a fine for assault and battery, or any other fine or punishment which may have been imposed for violated law. It is contended, however, that the fine being imposed, in part, to enforce a civil remedy, this takes away the criminal character of the contempt, and assimilates the proceeding to that class of cases where it is conceded that the process is merely to provide a remedy for the collection of money in those cases where an execution cannot issue. It is true, that, aside from any injury to the aggrieved party, the fine is limited to $250, and the imprisonment to six months. The contempt is as criminal when it impedes and obstructs civil remedies, as when it does not. The crime consists, in this case, in the wilful disobedience of the process or order of a court of record; and the remedy to the party is also given in such cases by statute. Where an actual loss or injury shall have been produced to any party by the misconduct alleged, a fine shall be imposed sufficient to indemnify, and to satisfy his costs and expenses, &c. (§ 22.) In all other cases, the fine shall not exceed $250. Courts of record are, by the statute, authorized, and had power without it, to enforce remedies of parties by inflicting this punishment. The cases of attachments for nonpayment of costs, or for the nonpayment of any sum of money, nonperformance of an award where money is awarded, it is conceded, are merely remedies in nature of an execution. They require the performance of duties which may be beyond the ability of the party to discharge. This is not criminal. The crime consists in a wilful, inexcusable, and unatoned for disobedience of some lawful order or process. The definition implies the power to obey, but makes the *corpus delicti* consist in what is the essence of all crime, *mala fides*, — a deliberate design to obstruct the course of justice, and contemn the requirements of the process. Of this contempt the plaintiff in

error was adjudged guilty, and a fine was imposed to compensate the party.

The cases cited, in the opinion of the Vice-Chancellor and Chancellor, sustain these views. The following cases also illustrate our positions : — People v. Nevins, 1 Hill's Rep. 154 ; Ex parte Parker, 3 Ves. 554 ; Rex v. Stokes, 1 Cowper, 136 ; 1 Atkyns, 262 ; Rex v. Pixley, Bunb. 202.

*Third.* The voluntary part of the bankrupt act is unconstitutional. It is not intended to present any argument on this point. The case does not probably require it ; and if it did, the whole subject has been so frequently discussed, that it is not supposed we can add any thing to the labor of others.

The relator, or defendant in error, claims that the writ of error in this cause was sued out for the purposes of delay only, and therefore asks that the judgment be affirmed, with the highest rate of damages and costs.

Mr. Chief-Justice TANEY delivered the opinion of the court.

The court have considered this case, and have come to the conclusion that the judgment of the Court of the State of New York for the Correction of Errors must be affirmed. But there is some difference among the justices who concur in affirming the judgment as to the principles upon which the affirmance ought to be placed. No further opinion will, therefore, be delivered, than merely to pronounce the judgment of this court, affirming the judgment rendered by the state court.

Mr. Justice McLEAN.

I dissent from the judgment of the court.

Mr. Justice WAYNE.

I do not concur with the majority of the court, and think that the judgment of the Court for the Trial of Impeachments and for the Correction of Errors should be reversed.